## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOINT TECHNOLOGY, INC. d/b/a REVERT SYSTEMS, an Oklahoma Corporation, | )<br>)<br>)<br>) |
| Plaintiff-Counter Defendant, | )<br>) |
| v. | ) Case No. CIV-11-846-M |
| GARY KENT WEAVER, JR., individually, | )<br>)<br>)<br>) |
| Defendant-Counter Claimant. | ) |

### ORDER

Before the Court is plaintiff-counter defendant Joint Technology, Inc. ("Joint") d/b/a Revert Systems' Motion to Dismiss Counterclaims, filed October 27, 2011. On November 17, 2011, defendant-counter claimant Gary Kent Weaver, Jr. ("Weaver") filed his response. Joint did not file a reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

Joint is a distributor of durable medical equipment and related products. In 2008, Weaver entered into an agreement to sell and deliver medical braces and compression equipment for Joint. Joint paid Weaver commission for his sales.

In August 2009, Weaver formed the sole proprietorship of Weaver Family Orthotics. Weaver processed orders for Joint through Weaver Family Orthotics. Joint paid commission directly to Weaver Family Orthotics.

In March 2010, Weaver Family Orthotics was incorporated as Weaver Medical Group, Inc. ("Weaver Medical"). Weaver Medical assumed the sales obligation of Weaver's contract with Joint. Joint made commission payments directly to Weaver Medical; after March 2010, Joint did not make

commission payments individually to Weaver.

Weaver alleges that, excluding payments for rent, Joint did not reimburse Weaver, Weaver Family Orthotics, or Weaver Medical for expenses incurred due to the performance of obligations for Joint. Weaver Medical hired independent contractors, at its own cost, to obtain, process, and deliver orders. Weaver further alleges that the independent contractors did not contract with Joint directly.

Weaver Medical operated out of nine facilities in Tennessee that were leased by Joint or Jim Patton ("Patton"), the president of Joint. Weaver, for Weaver Medical, prepared the facilities for operation and purchased furnishings, computer equipment, and office supplies for the nine locations without reimbursement from Joint.

Weaver Medical paid the monthly rent on the nine facilities in Tennessee. Joint reimbursed Weaver Medical for half of the rent through February 2011. In March 2011, Joint began to pay the entire rent for the facilities.

On May 20, 2011, Weaver terminated his relationship with Joint. Patton and Joint refused to allow Weaver access to the facilities and threatened criminal and civil actions if Weaver entered the facilities for any reason. Weaver alleges that he has attempted to arrange to retrieve the property, but Patton and Joint have refused to provide Weaver access.

According to Weaver, on or about May 23, 2011, Patton began contacting independent contractors that contracted with Weaver Medical. Weaver alleges that Patton informed the independent contractors that he intended to file suit against Weaver to enjoin Weaver from competing with Joint. Additionally, Patton threatened to name the independent contractors

individually in the suit if they continued to work for Weaver or Weaver Medical.[1]

On or about the same date, Patton disclosed Weaver's confidential financial and tax information to third parties. According to Weaver, Patton disclosed Weaver's Internal Revenue Service Form 1099s to third parties.

In or about September 2011, Patton told suppliers for Weaver Medical that Weaver was violating his contract by using the suppliers. Further, Patten threatened the suppliers for continuing to do business with Weaver and Weaver Medical.

In October 2011, Joint withheld approximately $5,000.00 from its final commission payment without providing an accounting. On July 26, 2011, Joint filed its Complaint. On October 18, 2011, Weaver filed his Counterclaim.

II.   Standard

Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

---

[1] Weaver's counterclaim states that Patton "threatened to name the independent contractors individually if they continued to do work for [Weaver] or [Weaver Medical]." Amended Answer, Counterclaims, and Third-Party Claims ("Counterclaim") [docket no. 25], at ¶ 54. The Court interprets this as an allegation that Patton threatened to name the independent contractors in criminal and civil actions against Weaver.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. at 1949 (internal quotations and citations omitted).

III.   Discussion

   A.   Tortious Interference with Business Relationship

Joint moves the Court to dismiss Weaver's tortious interference with business relationship claim because Weaver did not have a contractual relationship with his suppliers and because Patton's announcement of an intention to sue was not malicious or wrongful. Weaver contends that Joint interfered with his existing and prospective contractual relationship with suppliers.

"Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Tech., Inc. v. DunAn Holding Grp., Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009) (citing *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979)).

In the case at bar, the Court finds that Weaver does not allege sufficient facts to establish a cause of action for tortious interference with business relationship in regards to his relationship with his suppliers. Specifically, Weaver does not allege that he had a contractual or business right with

4

his suppliers. Rather, both parties acknowledge that the suppliers were free to conduct business with whomever the suppliers wanted. Joint's Motion to Dismiss Counterclaims [docket no. 28], at p. 3; Weaver's Response to Joint's Motion to Dismiss Counter Claims [docket no. 32], at p. 6. Thus, Weaver does not satisfy the first element of a claim for tortious interference with business relationship.

Additionally, Weaver alleges that Patton, on behalf of Joint, interfered with the business relationship of Weaver and various employees and customers to Weavers detriment. However, Weaver only alleges that "Patton's tactics successfully scared at least one supplier . . . into terminating its business relationship with Weaver." Counterclaim, at ¶ 56. Weaver is silent as to any damage to his relationship with his employees and customers. Thus, the Court finds Weaver's claim for tortious interference with business relationship in regards to his employees and customers is naked assertions devoid of further factual enhancement. *Ashcroft*, 129 S. Ct. at 1949. More specifically, Weaver's counterclaim does not contain sufficient facts to establish that the fourth element – the interference proximately caused damage – was satisfied in regards to his relationships with his employees and customers.

Therefore, the Court dismisses Weaver's claim for tortious interference with business relationship.

B. Fraud

The Supreme Court of Oklahoma has stated that:

> [T]he elements for actionable fraud [require]: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, 4) which is relied on by the other party to his (or her) own detriment. Fraud is never

>presumed and each of its elements must be proved by clear and convincing evidence.

*Bowman v. Presley,* 212 P.3d 1210, 1217-18 (Okla. 2009).

Weaver does not allege that he relied on any misrepresentation by Joint to his detriment. The gravamen of Weaver's claim is that Joint made misrepresentations regarding Weaver to Weaver's employees, suppliers, and customers. Thus, Weaver fails to satisfy the fourth element of fraud as he did not rely on Joint's misrepresentation.

Therefore, the Court dismisses Weaver's claim for fraud.[2]

C.   Defamation

Joint moves the Court to dismiss Weaver's defamation claim on the grounds that Weaver did not identify the alleged defamatory statement and that the First Amendment provides protection for its statements. Weaver contends that Joint's statements are not afforded a litigation privilege protection under the First Amendment.

"In order to recover for defamation, a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." *Trice v. Burress*, 137 P.3d 1253, 1257 (Okla. Civ. App. 2006) (internal quotation and citation omitted).

"The issue of whether a communication is privileged is a question of law to be determined by the court. The litigation privilege . . . accords attorneys, parties, jurors and witnesses immunity

---

[2] In his response, Weaver asserts that he made a valid claim for fraud under the Lanham Act. The Court finds this argument inapposite as Weaver made no mention of fraud under the Lanham Act in his counterclaim.

6

for comments or writings made *during* the course of or *preliminary* to judicial or quasi-judicial proceedings. It applies regardless of whether the communications are true or false." *Springer v. Richardson Law Firm*, 239 P.3d 473, 475 (Okla. Civ. App. 2010) (internal quotations and citations omitted) (emphasis in original).

Here, the Court finds that Weaver alleges sufficient facts to establish a plausible cause of action for defamation. First, Weaver alleges that Patton, on behalf of Joint, made false and defamatory statements when Patton told suppliers that Weaver was violating his contract by using the suppliers. Second, while Patton's statements mentioned the possibility of legal action, these statements were not privileged publications because they were not made during the course of or preliminary to a judicial or quasi judicial proceeding. Third, Joint was at least negligent because Patton contacted the suppliers and told them the statements. Finally, Weaver alleges that Patton's statements caused damages because at least one supplier terminated its business relationship with Weaver and Weaver Medical.

Therefore, the Court denies Joint's motion to dismiss Weaver's claim for defamation.

D.   Injunctive Relief

Joint moves to dismiss Weaver's request for injunctive relief on the grounds that Weaver's financial and tax information is not confidential. Weaver contends that Joint should be enjoined because Weaver has a right to operate his business without interference from Joint and because disclosure of Weaver's financial and tax information will cause irreparable harm.

"A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not

adversely affect the public interest." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).

Pursuant to 26 U.S.C. § 7431(a)(2), "[i]f any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States."[3]

In the case at bar, the Court finds that Weaver has not set forth sufficient allegations to establish actual success on the merits to enjoin Joint from interfering with Weaver's business. In light of the Court's decision to dismiss Weaver's claim for tortious interference with business relationship in Part III.A, Weaver cannot show he would have actual success on the merits for Joint's alleged interference with his business. Thus, the Court finds that it should not grant Weaver injunctive relief to enjoin Joint from interfering with Weaver's business.

However, the Court finds that Weaver has alleged sufficient facts to establish a request for injunctive relief in regards to Joint's disclosure of tax information. First, Weaver can show actual success on the merits because, assuming Weaver's allegations as true, a jury could find Joint and Patton were in violation of 26 U.S.C. § 7431(a)(2) when they disclosed Weaver's Internal Revenue Service Form 1099s to third parties. Second, Weaver alleges that he will suffer irreparable harm unless the injunction is issued because Patton will continue to disclose Weaver's tax information. Third, the threat of further disclosing Weaver's tax information outweighs any harm of an injunction

---

[3] As a general rule proscribed under 26 U.S.C. § 6103(a)(3), return information is confidential and no person who has or had access to return information should disclose it.

to Joint because Joint would not suffer any foreseeable harm in not disclosing Weaver's tax information. Finally, enjoining Joint to refrain from disclosing Weaver's tax information does not adversely affect the public interest as the requested injunction comports with the protections provided pursuant to 26 U.S.C. § 7431(a)(2).

Therefore, the Court grants in part and denies in part Joint's motion to dismiss Weaver's request for injunctive relief. Specifically, the Court grants Joint's motion to dismiss in regards to Weaver's request for injunctive relief pertaining to interference with his business, and the Court denies Joint's motion to dismiss in regards to Weaver's request for injunctive relief pertaining to disclosure of his tax information.

### E. Unjust Enrichment

Joint moves to dismiss Weaver's claim for unjust enrichment on the grounds that Weaver may have a cause of action for tortious interference with business relationship. Weaver contends that his claim for tortious interference with business relationship does not preclude him from bringing a claim for unjust enrichment.

> Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e. the party has money in its hands that, in equity and good conscience, it should not be allowed to retain. Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment.

*Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006). However, a plaintiff may make an alternative claim for unjust enrichment and a claim for an available tort claim as long as the plaintiff is not given double recovery. *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 228, 298 (Okla. Civ. App. 1996). Moreover, "[a] party may state as many separate claims or defenses as

9

it has, regardless of inconsistency." Fed. R. Civ. P. 8(d)(3).

The Court finds that Weaver's claim for unjust enrichment is an alternative theory of recovery for Weaver's tortious interference with business relationship claim. As such, Weaver can allege both a claim for unjust enrichment and tortious interference with business relationship as long as Weaver does not receive double recovery. Furthermore, in light of the Court's decision to dismiss Weaver's claim for tortious interference with business relationship in Part III.A, Weaver is not left with an adequate remedy at law to recover his damages for the alleged interference.

Therefore, the Court denies Joint's motion to dismiss Weaver's claim for unjust enrichment.

F.      Accounting and Payment

Joint moves to dismiss Weaver's claim for accounting and payment on the grounds that Weaver received full payment for all commissions that were collected during his employment term. Weaver contends that Joint's arguments are based on merit and should not be considered in a motion to dismiss.

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "A motion to dismiss considers the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence (or lack thereof) upon which the allegations are based." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005) (citing *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1230 (10th Cir. 2003)).

Here, Weaver specifically alleges that "[Joint] withheld approximately $5,000.00 from its final commission payment without providing an accounting." Counterclaim [docket no. 25], at ¶ 58. However, in citing the contract between Joint and Weaver and contending that Joint made all

commission payments under the contract, Joint implicitly requests the Court to consider evidence upon which Weaver's allegations are based. Thus, the Court accepts Weaver's allegations as true and concludes that Weaver's contentions cannot be considered in the Court's analysis whether to dismiss Weaver's accounting claim.

Therefore, the Court denies Joint's motion to dismiss Weaver's claim for accounting and payment.

### G. Conversion and Replevin

Joint asserts that Weaver's claim for conversion and replevin should not be joined under Federal Rule of Civil Procedure 18 because the Court does not have supplemental jurisdiction as said claim is unrelated to Joint's Complaint. Weaver contends that the claim for conversion and replevin arise out of the same nucleus of operative facts as Joint's claims in its Complaint.

"Rule 18 permits very broad joinder of claims, counterclaims, cross-claims, and third-party claims." *Ashe v. Swenson*, 397 U.S. 436, 455 (1970). Specifically, Rule 18(a) provides: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

Furthermore, "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Federal and state law claims satisfy this standard when they "derive from a common nucleus of operative facts." *See Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

In the case at bar, the Court finds Weaver's claim for conversion and replevin are so related

to Joint's claims that they form part of the same case or controversy. Weaver's claim for conversion and replevin derive from a common nucleus of operative facts regarding the employment contract and relationship between Joint and Weaver. Specifically, Joint's remaining claims for breach of a non-solicitation covenant and failure to return inventory turn on the terms of the contract between the parties and what property belonged to Joint. Similarly, Weaver's claim for conversion and replevin rely on the operative fact of what personal property belonged to Weaver at the time of his termination. Thus, the Court finds that it has supplemental jurisdiction over Weaver's claim for conversion and replevin and that Weaver may assert such a claim in his counterclaim.

Additionally, Joint contends that Weaver's claim for conversion and replevin should not be joined to this matter under Federal Rule of Civil Procedure 20. However, Rule 20 provides for joinder of parties, not claims. *See* Fed. R. Civ. P. 20. *See also Ashe v. Swenson*, 397 U.S. 436, 455-56 (1970). To that end, a Rule 20 analysis is not necessary as Weaver is already a party in this matter.

Therefore, the Court denies Joint's motion to dismiss Weaver's claim for conversion and replevin.

H.      Leave to Amend

In Weaver's response, he requests, in the alternative, leave to amend his counterclaim. On December 1, 2011, Weaver filed a separate Motion in the Alternative for Leave to File a Second Amended Answer, Counterclaims, and Third-Party Claims [docket no. 34]. In light of the Court's Order denying leave to amend, entered this same date, the Court finds Weaver's request for leave to amend is moot.

IV.     Conclusion

Accordingly, the Court GRANTS IN PART and DENIES IN PART Joint's Motion to Dismiss Counterclaims [docket no. 28]. Specifically, the Court GRANTS Joint's Motion to Dismiss Counterclaims regarding the following claims:

    (1)     Tortious Interference with Business Relations;

    (2)     Fraud; and

    (3)     Injunctive Relief from Interference with Business.

The Court DENIES Joint's Motion to Dismiss Counterclaims regarding the following claims:

    (1)     Defamation;

    (2)     Injunctive Relief from Disclosure of Tax Information;

    (3)     Unjust Enrichment;

    (4)     Accounting and Payment; and

    (5)     Conversion and Replevin.

Finally, the Court finds Weaver's request for leave to amend is MOOT.

**IT IS SO ORDERED this 29th day of December, 2011.**

*[Signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE