IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOINT TECHNOLOGY, INC. d/b/a REVERT SYSTEMS, an Oklahoma Corporation,<br><br>    Plaintiff-Counter Defendant,<br><br>v.<br><br>GARY KENT WEAVER, JR., individually,<br><br>    Defendant-Counter Claimant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. CIV-11-846-M<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Before the Court is third-party defendant Jim Patton's ("Patton") Motion to Dismiss Third-Party Action, filed October 31, 2011. On November 21, 2011, third-party plaintiff Gary Kent Weaver, Jr. ("Weaver") filed his response. Patton did not file a reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

Joint Technology, Inc. ("Joint") d/b/a Revert Systems is a distributor of durable medical equipment and related products. Patton is the president and a shareholder of Joint.

In 2008, Weaver entered into an agreement to sell and deliver medical braces and compression equipment for Joint. Weaver received orders for Joint through doctor referrals, processed the order for Joint, and delivered devices to patients. Joint paid Weaver commission for his sales.

In August 2009, Weaver formed the sole proprietorship of Weaver Family Orthotics. Weaver processed orders for Joint through Weaver Family Orthotics. Joint paid commission directly to Weaver Family Orthotics.

In March 2010, Weaver Family Orthotics was incorporated as Weaver Medical Group, Inc. ("Weaver Medical"). Weaver Medical assumed the sales obligation of Weaver's contract with Joint. Joint made commission payments directly to Weaver Medical; after March 2010, Joint did not make commission payments individually to Weaver.

Weaver alleges that, excluding payments for rent, Joint did not reimburse Weaver, Weaver Family Orthotics, or Weaver Medical for expenses incurred due to the performance of obligations for Joint. Weaver Medical hired independent contractors, at its own cost to obtain, process, and deliver orders. Weaver further alleges that the independent contractors did not contract with Joint directly.

Weaver Medical operated out of nine facilities in Tennessee that were leased by Patton or Joint. Weaver, for Weaver Medical, prepared the facilities for operation and purchased furnishings, computer equipment, and office supplies for the nine locations without reimbursement from Joint.

Weaver Medical paid the monthly rent on the nine facilities in Tennessee. Joint reimbursed Weaver Medical for half of the rent through February 2011. In March 2011, Joint began to pay the entire rent for the facilities.

On May 20, 2011, Weaver terminated his relationship with Joint. Patton and Joint refused to allow Weaver access to the facilities and threatened criminal and civil actions if Weaver entered the facilities for any reason. Weaver alleges that he has attempted to arrange to retrieve the property, but Patton and Joint have refused to provide Weaver access.

According to Weaver, on or about May 23, 2011, Patton began contacting independent contractors that contracted with Weaver Medical. Weaver alleges that Patton informed the independent contractors that he intended to file suit against Weaver to enjoin Weaver from

competing with Joint. Additionally, Patton threatened to name the independent contractors individually in the suit if they continued to work for Weaver or Weaver Medical.[1]

On or about the same date, Patton disclosed Weaver's confidential financial and tax information to third parties. According to Weaver, Patton disclosed Weaver's Internal Revenue Service Form 1099s to third parties.

In or about September 2011, Patton told suppliers for Weaver Medical that Weaver was violating his contract by using the suppliers. Further, Patten threatened the suppliers for continuing to do business with Weaver and Weaver Medical.

In October 2011, Joint withheld approximately $5,000.00 from its final commission payment without providing an accounting. On July 26, 2011, Joint filed its Complaint. On October 18, 2011, Weaver filed his Third-Party Claims.

II.  Standard

Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

---

[1] Weaver's third-party action states that Patton "threatened to name the independent contractors individually if they continued to do work for [Weaver] or [Weaver Medical]. Amended Answer, Counterclaims, and Third-Party Claims ("Third-Party Claims") [docket no. 25], at ¶ 54. The Court interprets this as an allegation that Patton threatened to name the independent contractors in criminal and civil actions against Weaver.

possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 1949 (internal quotations and citations omitted).

III. Discussion

    A. Tortious Interference with Business Relationship

Patton moves the Court to dismiss Weaver's tortious interference with business relationship claim because Weaver did not have a contractual relationship with his suppliers and because Patton's announcement of an intention to sue was not malicious or wrongful. Weaver contends that Patton interfered with his existing and prospective contractual relationship with suppliers.

"Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Tech., Inc. v. DunAn Holding Grp., Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009) (citing *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979)).

In the case at bar, the Court finds that Weaver does not allege sufficient facts to establish a cause of action for tortious interference with business relationship in regards to his relationship with

his suppliers. Specifically, Weaver does not allege that he had a contractual or business right with his suppliers. Rather, both parties acknowledge that the suppliers were free to conduct business with whomever the suppliers wanted. Patton's Motion to Dismiss Third Party Action [docket no. 30], at p. 3;[2] Weaver's Response to Patton's Motion to Dismiss Third Party Action [docket no. 33], at p. 5. Thus, Weaver does not satisfy the first element of a claim for tortious interference with business relationship.

Additionally, Weaver alleges that Patton interfered with the business relationship of Weaver and various employees and customers to Weavers detriment. However, Weaver only alleges that "Patton's tactics successfully scared at least one supplier . . . into terminating its business relationship with Weaver." Third-Party Claims, at ¶ 56. Weaver is silent as to any damage to his relationship with his employees and customers. Thus, the Court finds Weaver's claim for tortious interference with business relationship in regards to his employees and customers is naked assertions devoid of further factual enhancement. *Ashcroft*, 129 S. Ct. at 1949. More specifically, Weaver's third-party claim does not contain sufficient facts to establish that the fourth element – the interference proximately caused damage – was satisfied in regards to his relationships with his employees and customers.

Therefore, the Court dismisses Weaver's claim for tortious interference with business relationship.

B. Fraud

The Supreme Court of Oklahoma has stated that:

---

[2]Patton's Motion to Dismiss Third party Action incorporates the arguments made in Joint's Motion to Dismiss Counterclaims [docket no. 28], at p. 3.

> [T]he elements for actionable fraud [require]: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, 4) which is relied on by the other party to his (or her) own detriment. Fraud is never presumed and each of its elements must be proved by clear and convincing evidence.

*Bowman v. Presley,* 212 P.3d 1210, 1217-18 (Okla. 2009).

Weaver does not allege that he relied on any misrepresentation by Patton to his detriment. The gravamen of Weaver's claim is that Patton made misrepresentations regarding Weaver to Weaver's employees, suppliers, and customers. Thus, Weaver fails to satisfy the fourth element of fraud as he did not rely on Patton's misrepresentation.

Therefore, the Court dismisses Weaver's claim for fraud.[3]

C.     Defamation

Patton moves the Court to dismiss Weaver's defamation claim on the grounds that Weaver did not identify the alleged defamatory statement and that the First Amendment provides protection for its statements. Weaver contends that Patton's statements are not afforded a litigation privilege protection under the First Amendment.

"In order to recover for defamation, a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." *Trice v. Burress*, 137 P.3d 1253, 1257 (Okla. Civ. App. 2006) (internal quotation and citation omitted).

---

[3] In his response, Weaver asserts that he made a valid claim for fraud under the Lanham Act. The Court finds this argument inapposite as Weaver made no mention of fraud under the Lanham Act in his third-party claim.

"The issue of whether a communication is privileged is a question of law to be determined by the court. The litigation privilege . . . accords attorneys, parties, jurors and witnesses immunity for comments or writings made *during* the course of or *preliminary* to judicial or quasi-judicial proceedings. It applies regardless of whether the communications are true or false." *Springer v. Richardson Law Firm*, 239 P.3d 473, 475 (Okla. Civ. App. 2010) (internal quotations and citations omitted) (emphasis in original).

Here, the Court finds that Weaver alleges sufficient facts to establish a plausible cause of action for defamation. First, Weaver alleges that Patton made false and defamatory statements when Patton told suppliers that Weaver was violating his contract by using the suppliers. Second, while Patton's statements mentioned the possibility of legal action, these statements were not privileged publications because they were not made during the course of or preliminary to a judicial or quasi judicial proceeding. Third, Patton was at least negligent because he contacted the suppliers and told them the statements. Finally, Weaver alleges that Patton's statements caused damages because at least one supplier terminated its business relationship with Weaver and Weaver Medical.

Therefore, the Court denies Patton's motion to dismiss Weaver's claim for defamation.

D. <u>Injunctive Relief</u>

Patton moves to dismiss Weaver's request for injunctive relief on the grounds that Weaver's financial and tax information is not confidential. Weaver contends that Patton should be enjoined because Weaver has a right to operate his business without interference from Patton and because disclosure of Weaver's financial and tax information will cause irreparable harm.

"A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs

the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).

Pursuant to 26 U.S.C. § 7431(a)(2), "[i]f any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States."[4]

In the case at bar, the Court finds that Weaver has not set forth sufficient allegations to establish actual success on the merits to enjoin Patton from interfering with Weaver's business. In light of the Court's decision to dismiss Weaver's claim for tortious interference with business relationship in Part III.A, Weaver cannot show he would have actual success on the merits for Patton's alleged interference with his business. Thus, the Court finds that it should not grant Weaver injunctive relief to enjoin Joint from interfering with Weaver's business.

However, the Court finds that Weaver has alleged sufficient facts to establish a request for injunctive relief in regards to Patton's disclosure of tax information. First, Weaver can show actual success on the merits because, assuming Weaver's allegations as true, a jury could find Joint and Patton were in violation of 26 U.S.C. § 7431(a)(2) when they disclosed Weaver's Internal Revenue Service Form 1099s to third parties. Second, Weaver alleges that he will suffer irreparable harm unless the injunction is issued because Patton will continue to disclose Weaver's tax information.

---

[4] As a general rule proscribed under 26 U.S.C. § 6103(a)(3), return information is confidential and no person who has or had access to return information should disclose it.

Third, the threat of further disclosing Weaver's tax information outweighs any harm of an injunction to Patton because Patton would not suffer any foreseeable harm in not disclosing Weaver's tax information. Finally, enjoining Patton to refrain from disclosing Weaver's tax information does not adversely affect the public interest as the requested injunction comports with the protections provided pursuant to 26 U.S.C. § 7431(a)(2).

Therefore, the Court grants in part and denies in part Patton's motion to dismiss Weaver's request for injunctive relief. Specifically, the Court grants Patton's motion to dismiss in regards to Weaver's request for injunctive relief pertaining to interference with his business, and the Court denies Patton's motion to dismiss in regards to Weaver's request for injunctive relief pertaining to disclosure of his tax information.

E. Unjust Enrichment

Patton moves to dismiss Weaver's claim for unjust enrichment on the grounds that Weaver may have a cause of action for tortious interference with business relationship. Weaver contends that his claim for tortious interference with business relationship does not preclude him from bringing a claim for unjust enrichment.

> Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e. the party has money in its hands that, in equity and good conscience, it should not be allowed to retain. Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment.

*Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006). However, a plaintiff may make an alternative claim for unjust enrichment and a claim for an available tort claim as long as the plaintiff is not given double recovery. *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 228,

298 (Okla. Civ. App. 1996). Moreover, "[a] party may state as many separate claims or defenses as it has, regardless of inconsistency." Fed. R. Civ. P. 8(d)(3).

The Court finds that Weaver's claim for unjust enrichment is an alternative theory of recovery for Weaver's tortious interference with business relationship claim. As such, Weaver can allege both a claim for unjust enrichment and tortious interference with business relationship as long as Weaver does not receive double recovery. Furthermore, in light of the Court's decision to dismiss Weaver's claim for tortious interference with business relationship in Part III.A, Weaver is not left with an adequate remedy at law to recover his damages for the alleged interference.

Therefore, the Court denies Patton's motion to dismiss Weaver's claim for unjust enrichment.

### F.   Accounting

Patton moves to dismiss Weaver's claim for accounting against him. However, Weaver has not alleged such a claim against Patton. Third-Party Claims, *passim*; Weaver's Response to Patton's Motion to Dismiss Third Party Action [docket no. 33], at p. 15. Thus, the Court finds Patton's motion to dismiss Weaver's claim is moot.

### G.   Conversion and Replevin

Patton asserts that Weaver's claim for conversion and replevin against Patton should not be joined under Federal Rule of Civil Procedure 20(a) because Patton's claims are unrelated to Joint's Complaint. Weaver contends that the claim for conversion and replevin should be joined because Patton is a necessary party in this matter.

The Supreme Court has noted that Rule 20 provides "liberal joinder." *See Snyder v. Harris*, 394 U.S. 332, 340 (1969). Pursuant to Rule 20(a)(2), a person may be joined in an action as a defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with

respect to arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."

Furthermore, "Rule 19 is available if an action should not proceed without a particular person as a defendant . . . ." *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983). Rule 19(a) requires a court to order joinder of a party if:

> "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

*Orff v. United States*, 545 U.S. 596, 602 (2005) (citing Fed. R. Civ. P. 19(a)).

In the case at bar, the Court finds Weaver's claim for conversion and replevin against Patton should be joined in this matter. The Court finds that Patton's absence would cause Weaver to be denied of complete relief because Weaver has alleged that Patton and/or Joint have possession of Patton's personal property. Third-Party Claim, at ¶ 86. Additionally, because the crux of Weaver's claims against Joint involve Patton's actions done on behalf of Joint, Weaver's conversion and replevin allegations against Patton involve the same transactions or occurrences and share common questions of law and facts as Weaver's claims against Joint.

Therefore, the Court denies Patton's motion to dismiss Weaver's claim for conversion and replevin.

H.      Leave to Amend

In Weaver's response, he requests, in the alternative, leave to amend his third-party claims.

On December 1, 2011, Weaver filed a separate Motion in the Alternative for Leave to File a Second Amended Answer, Counterclaims, and Third-Party Claims [docket no. 34]. In light of the Court's Order denying leave to amend, entered this same date, the Court finds Weaver's request for leave to amend is moot.

IV. Conclusion

Accordingly, the Court GRANTS IN PART and DENIES IN PART Patton's Motion to Dismiss Third-Party Action [docket no. 30]. Specifically, the Court GRANTS Patton's Motion to Dismiss Third-Party Action regarding the following claims:

(1) Tortious Interference with Business Relations;

(2) Fraud; and

(3) Injunctive Relief from Interference with Business.

The Court DENIES Patton's Motion to Dismiss Third-Party Action regarding the following claims:

(1) Defamation;

(2) Injunctive Relief from Disclosure of Tax Information;

(3) Unjust Enrichment; and

(4) Conversion and Replevin.

Finally, the Court finds Weaver's request for leave to amend and Patton's motion to dismiss Weaver's claim for accounting are MOOT.

**IT IS SO ORDERED this 29th day of December, 2011.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE