**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOINT TECHNOLOGY, INC. d/b/a REVERT SYSTEMS, an Oklahoma Corporation, | ) ) ) ) |
| Plaintiff-Counter Defendant, | ) ) |
| v. | ) ) Case No. CIV-11-846-M |
| GARY KENT WEAVER, JR., | ) ) ) |
| Defendant-Counter Claimant, | ) ) |
| GARY KENT WEAVER, JR., | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| JIM PATTON, | ) ) |
| Third-Party Defendant, | ) |
| WEAVER MEDICAL GROUP, INC., | ) ) |
| Intervenor. | ) |

**ORDER**

Before the Court is plaintiff Joint Technology, Inc. ("Joint") d/b/a Revert Systems and third-party defendant Jim Patton's ("Patton") Motion to Dismiss, filed January 30, 2012. On February 13, 2012, intervenor Weaver Medical Group, Inc. ("Weaver Medical") filed its response. Joint and Patton have not filed a reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction

Gary Kent Weaver, Jr. ("Weaver") is the owner and operator of Weaver Medical. Prior to March 2010, Weaver worked as a sales agent for Joint.

In March 2010, Weaver Medical assumed the sales obligation of Weaver's contract with Joint. Weaver Medical never executed a written contract with Joint. Weaver Medical alleges that it received orders for Joint solely through doctor referrals. Joint made commission payments directly to Weaver Medical, which Weaver Medical alleges were not based upon its expenses. Weaver Medical asserts that it was not paid all its earned commissions.

Weaver Medical operated out of nine facilities in Tennessee that were leased by Joint or Patton, the president and shareholder of Joint. Weaver, for Weaver Medical, prepared the facilities for operation and purchased furnishings, computer equipment, and office supplies for the nine locations without reimbursement from Joint.

On May 20, 2011, Weaver terminated Weaver Medical's relationship with Joint. Patton and Joint refused to allow Weaver Medical access to the facilities and threatened criminal and civil actions if Weaver entered the facilities for any reason. According to Weaver Medical, Weaver has attempted to arrange to retrieve its property, but Joint and Patton have refused to provide Weaver access.

Weaver Medical alleges that, on or about May 23, 2011, Patton began contacting several independent contractors employed by Weaver Medical. Weaver Medical further alleges that Patton informed the independent contractors that he intended to file suit against Weaver to enjoin Weaver from competing with Joint. Additionally, Patton threatened to name the independent contractors individually in the suit if they continued to work for Weaver or Weaver Medical.

On or about the same date, Patton disclosed Weaver's confidential financial and tax information to third parties, including Weaver Medical's employees. According to Weaver Medical, Patton disclosed Weaver's Internal Revenue Service Form 1099s to third parties and misrepresented

financial statements as a report of pure profit to Weaver Medical's employees.

In or about September 2011, Patton told suppliers for Weaver Medical that Weaver was violating his contract by using the suppliers. According to Weaver Medical, Patten threatened the suppliers for continuing to do business with Weaver and Weaver Medical. Weaver Medical alleges that Patton scared at least one supplier into terminating its business relationship and three-year contract with Weaver and Weaver Medical.

Purportedly, in October 2011, Joint withheld approximately $5,000.00 from its final commission payment without providing an accounting. On July 26, 2011, Joint filed its Complaint. On October 18, 2011, Weaver filed his Counterclaim, and on January 10, 2012, Weaver Medical filed its Complaint in Intervention.

## II.    Standard

Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief."

*Id.* (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. at 1949 (internal quotations and citations omitted).

III.　Discussion

　　A.　Tortious Interference with Business Relationship[1]

Weaver Medical asserts a claim for tortious interference with business relationship as to its suppliers, employees, and customers. Joint and Patton contend that Weaver Medical has failed to provide sufficient facts to support a claim for tortious interference with business relationship.

"Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Tech., Inc. v. DunAn Holding Grp., Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009) (citing *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979))."The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse. This element clearly requires a showing of bad faith." *Tuffy's Inc.*, 212 P.3d at 1165 (internal citation omitted).

---

[1] Weaver Medical brings an action for "tortious interference with business relationship." Weaver Medical's Complaint in Intervention (hereafter, "Weaver Medical's Complaint") [docket no. 42] at p. 5. The Supreme Court of Oklahoma has noted that "the terms 'malicious interference,' 'intentional interference,' and 'tortious interference' with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts." *Tuffy's Inc. v. City of Okla. City*, 212 P.3d 1158, 1165-66 (Okla. 2009) (internal citation omitted).

In the case at bar, the Court, having reviewed Weaver Medical's Complaint, finds that Weaver Medical has alleged sufficient facts to establish a claim for tortious interference with business relationship as to Weaver Medical's suppliers. Specifically, Weaver Medical has alleged a three-year contractual relationship with a supplier that was terminated due to Patton's threats to sue the supplier based upon a contract Weaver Medical violated. Furthermore, accepting Weaver Medical's allegations as true,[2] the Court further finds that Weaver Medical satisfies the element of malice because Patton's threats were unreasonable and in bad faith as he and Joint knew that they did not have a valid claim against the suppliers and that Weaver Medical was not a party to the alleged contract.

However, the Court finds that Weaver Medical has not alleged sufficient facts to establish a claim for tortious interference with business relationship regarding Weaver Medical's employees. Here, Weaver Medical alleged that its employees were "independent contractors." Weaver Medical's Complaint [docket no. 42] at pp. 3-4. Moreover, Weaver Medical does not respond to Joint and Patton's contentions that the independent contractors were not employed under written contracts. Weaver Medical also never alleged that there existed a "contractual or business right" which prevented the independent contractors from discontinuing their employment with Weaver Medical. To that end, the Court finds that Weaver Medical has not satisfied the first element – the interference was with an existing contractual or business right – in regards to Weaver Medical's relationships with the independent contractors.

Lastly, in Weaver Medical's Complaint, Weaver Medical claimed tortious interference with

---

[2] When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

business relationship as to its customers. [docket no. 42] at p. 5. However, having carefully reviewed Weaver Medical's Complaint, the Court finds that Weaver Medical failed to allege sufficient facts regarding a tortious interference with business relationship as to its customers. In fact, Weaver Medical notes in its response that "Weaver Medical does not state a claim for intentional interference with business relationship as to Weaver Medical's customers." Weaver Medical's Response to Joint and Patton's Motion to Dismiss [docket no. 45] at p. 7 n.1. Therefore, the Court finds that Weaver Medical has abandoned its claim for intentional interference with business relationship as to Weaver Medical's customers.

Accordingly, the Court: (1) denies Joint and Patton's motion to dismiss regarding Weaver Medical's claim for interference with business relationship as to Weaver Medical's suppliers, (2) dismisses Weaver Medical's claim for tortious interference with business relationship as to Weaver Medical's employees, and (3) dismisses Weaver Medical's claim for intentional interference with business relationship as to Weaver Medical's customers.

B.    Unjust Enrichment

"Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, i.e., the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006).

Here, the Court finds that Weaver Medical has alleged a condition which, if accepted as true, would result in Joint and Patton obtaining profits they should not be allowed to retain. Specifically, Weaver Medical alleges that Joint and Patton benefitted by failing to pay Weaver Medical its estimated $220,000 in commission it earned.

Accordingly, the Court denies Joint and Patton's motion to dismiss Weaver Medical's claim for unjust enrichment.

C.   Joint's Breach of Contract Claims

In Joint and Patton's Motion to Dismiss, Joint requests leave to reassert its breach of contract claims against Weaver Medical should the Court deny Joint and Patton's motion to dismiss Weaver Medical's unjust enrichment claims.  However, Joint makes its request to reassert the dismissed claims without any argument as to how Weaver Medical's unjust enrichment claim revives Joint's breach of contract claims.

Accordingly, the Court denies Joint's request to reassert its breach of contract claims.

D.   Accounting and Payment

Weaver Medical asserts a claim for accounting and payment based upon Joint and Patton's failure to pay commissions.  Joint and Patton contend that Weaver Medical does not have a valid claim for accounting and payment because Weaver Medical had no contract with Joint and Patton.

Under Oklahoma law, a contract can be either expressed or implied. *Jones v. Univ. of Cent. Okla.*, 910 P.2d 987, 989 (Okla. 1995).  "The existence and terms of an implied contract are manifested by conduct." *Id.*  Specifically, "[i]mplied contracts exist where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract . . . .With an implied contract, the conduct of the parties suggests the agreement that, in fairness, they ought to have made."

Having carefully reviewed Weaver Medical's Complaint, and accepting Weaver Medical's allegations as true, the Court finds that there was an implied contract between Weaver Medical and

7

Joint as to support Weaver Medical's claim for accounting and payment. While Weaver Medical never entered into an express contract with Joint or Patton, Weaver Medical alleges that it performed sales services for Joint from March 2010 through May 2011 and that Joint directly paid Weaver Medical commission on certain products. Based upon this conduct, the Court finds that there was an implied or presumed obligation for Joint to pay Weaver Medical for its sales services. Therefore, the Court further finds that Weaver Medical's accounting and payment claim for the withholding of its last payment of commission is warranted based upon allegations of an implied contract.

Accordingly, the Court denies Joint's motion to dismiss Weaver Medical's accounting and payment claim.

    E.    <u>Joint's Breach of Exclusivity Agreement and Breach of Non-Solicitation Covenant</u>

In Joint and Patton's Motion to Dismiss, Joint requests leave to reassert its breach of non-solicitation and exclusivity claims against Weaver Medical should the Court find that there was an implied contract to pay commissions. However, in the Court's October 4, 2011 Order, the Court dismissed Joint's non-solicitation and exclusivity claims against Weaver Medical because Weaver Medical was not a party to the express contract between Weaver and Joint. The Court finds that Weaver Medical's status as a party to the implied contract for commission does not require it to be a party in the express contract upon which the non-solicitation and exclusivity claims are based upon.

Accordingly, the Court denies Joint's request to reassert its breach of non-solicitation and exclusivity claims.

    F.    <u>Conversion and Replevin</u>

Weaver Medical asserts that Joint and Patton have possession of its personal property valued at $3,300.00. Joint and Patton move to dismiss Weaver Medical's claim for conversion and replevin

8

because the property was abandoned by Weaver, it was worth less than $500, and Weaver accepted expense reimbursements for the property.

Under Oklahoma law, "[c]onversion is an act of dominion wrongfully exerted over another's tangible personal property in denial of or inconsistent with the owner's rights in the property." *Chaparral Energy, L.L.C. v. Pioneer Exploration, Ltd.*, 214 P.3d 1161, 1164 (Okla. Civ. App. 2010).

Furthermore, as stated in Part III.A, a court must accept as true all of the factual allegations contained in the complaint when it is ruling on a motion to dismiss. *Erickson*, 551 U.S. at 93-94. "A motion to dismiss considers the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence (or lack thereof) upon which the allegations are based." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005) (citing *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1230 (10th Cir. 2003)).

Here, the Court finds that Weaver Medical has alleged sufficient facts to support a claim for conversion and replevin because Weaver Medical alleges that Joint and Patton have possession of Weaver Medical's personal property and refuse to grant access to retrieve said property. The Court further finds Joint and Patton's contentions – i.e., whether the property was abandoned, the value of the property, and whether Weaver was reimbursed for the property – require the Court to consider the evidence upon which the allegations are based. Thus, in accepting Weaver's allegations as true, the Court finds that Weaver Medical has alleged a valid claim for conversion and replevin and further finds that Joint and Patton's contentions cannot be considered in the Court's analysis whether to dismiss Weaver Medical's claim for conversion and replevin.

Accordingly, the Court denies Joint and Patton's motion to dismiss Weaver Medical's claim for conversion and replevin.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Joint and Patton's Motion to Dismiss [docket no. 43]. Specifically, the Court GRANTS Joint and Patton's Motion to Dismiss regarding the following claims:

(1) Tortious Interference with Business Relationship as to Weaver Medical's Employees; and

(2) Tortious Interference with Business Relationship as to Weaver Medical's Customers.

The Court DENIES Joint and Patton's Motion to Dismiss regarding the following claims:

(1) Tortious Interference with Business Relationship as to Weaver Medical's Suppliers;

(2) Unjust Enrichment;

(3) Accounting and Payment against Joint; and

(4) Conversion and Replevin.

Finally, the Court DENIES Joint's requests to reassert its claims for breach of contract, breach of exclusivity agreement, and breach of non-solicitation covenant.

**IT IS SO ORDERED this 14th day of March, 2012.**

*[signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE