**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOINT TECHNOLOGY, INC. d/b/a REVERT SYSTEMS, an Oklahoma Corporation, | ) ) ) ) | |
| Plaintiff-Counter Defendant, | ) ) | |
| v. | ) ) | Case No. CIV-11-846-M |
| GARY KENT WEAVER, JR., | ) ) | |
| Defendant-Counter Claimant, | ) ) | |
| GARY KENT WEAVER, JR., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| JIM PATTON, | ) ) | |
| Third-Party Defendant, | ) ) | |
| WEAVER MEDICAL GROUP, INC., | ) ) | |
| Intervenor. | ) | |

**ORDER**

This case is scheduled for trial on the Court's March 2013 trial docket.

Before the Court is defendant Gary Kent Weaver, Jr.'s ("Weaver") Motion for Partial Summary Judgment, filed November 30, 2012.  On December 14, 2012, plaintiff Joint Technology, Inc. ("Joint") filed its response, and on December 19, 2012, Weaver filed his reply.  Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

Joint is a distributor of durable medical equipment and related products.  In 2008, Joint hired Weaver as an independent agent to solicit referral business from various medical providers and

health clinics.   Joint also leased office space from clinics in order to staff Joint employees knowledgeable in fitting the devices.  According to Joint, Joint considered Weaver as an independent agent for tax purposes only.

On March 18, 2008, Joint and Weaver executed the Agreement memorializing the terms of the relationship.  Joint paid Weaver commission based on the volume of his sales.  Specifically, Joint paid Weaver 18% commission for monthly billing levels of $0.00-$24,999.99, 20% commission for monthly billing levels of $25,000.00-$34,999.99, and 22% commission on monthly billing levels $35,000.00 or greater.  Weaver obtained orders for Joint through doctor referrals, but said doctors were not compensated for their referrals.  At anytime, either party could terminate the Agreement with or without cause and notice.

Joint asserts that Medicare and Medicaid paid an average of 20% of Joint's total billings. Joint assured Weaver that Medicare reimbursed Joint for its products during the recruitment efforts.

On July 26, 2011, Joint filed its Complaint.  On October 18, 2011, Weaver filed his Counterclaim, and on January 10, 2012, Weaver Medical Group, Inc. filed its Complaint in Intervention.  Weaver now moves for partial summary judgment as to Joint's contract claims.[1]

II.    Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving

---

[1]Although Weaver asserts that he is "entitled to judgment in his favor on all of [Joint's] contract claims as a matter of law," he does not specify for which claims he seeks judgment.  Upon careful review of the parties' submissions and the docket in this matter, the Court interprets Weaver's motion as a motion for summary judgment as to Joint's claims for breach of exclusivity, breach of non-solicitation covenant prior to termination, and breach of non-solicitation covenant after termination.

party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

Weaver asserts that he is entitled to summary judgment as to Joint's contract claims because the Agreement violated the Medicare Anti-Kickback Act ("Act"). Joint contends that it did not violate the Act as Weaver was a bona fide employee.

Under Oklahoma law, a party may not recover on the basis of an illegal contract. *See An-Cor, Inc. v. Reherman*, 835 P.2d 93, 96 (Okla. 1992). To that end, "[a] contract made in violation of a statute is void and when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover." *Kincaid v. Black Angus Motel, Inc.*, 983 P.2d 1016, 1018-19 (Okla. 1999).

A party violates the Act when he or she:

> knowingly and willfully offers or pays any remuneration . . . to any
> person to induce such person . . . to refer an individual to a person for
> the furnishing or arranging for the furnishing of any item or service
> for which payment may be made in whole or in part under a Federal
> health care program . . . .

42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).  The Tenth Circuit has further clarified "that a

person who offers or pays remuneration to another person violates the Act so long as one purpose

of the offer or payment is to induce Medicare or Medicaid patient referrals."  *United States v.*

*McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000).  However, the Act does not prohibit "any amount

paid by an employer to an employee (who has a bona fide employment relationship with such

employer) for employment in the provision of covered items or services."  42 U.S.C. § 1320a-

7b(b)(3); *see also* 42 C.F.R. § 1001.952(i).

    The Act relies upon 26 U.S.C. § 3121(d)(2) for its definition of employee.  42 C.F.R. §

1001.952(i).  Pursuant to 26 U.S.C. § 3121(d)(2), an "employee" is "any individual who, under the

usual common law rules applicable in determining the employer-employee relationship, has the

status of an employee." 26 U.S.C. § 3121(d)(2).  The Supreme Court has clarified that the common

law definition of "employee" is "'the general common law of agency, rather than . . . the law of any

particular State.'" *Nationwide Mut. Ins. Co. v. Darden*, 503U.S. 318, 323 n.3 (1992) (quoting *Cmty.*

*for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)).

    In determining whether a party is an employee under the general common law of agency, a

court must consider:

> the hiring party's right to control the manner and means by which the
> product is accomplished. Among the other factors relevant to this
> inquiry are the skill required; the source of the instrumentalities and
> tools; the location of the work; the duration of the relationship
> between the parties; whether the hiring party has the right to assign

4

> additional projects to the hired party; the extent of the hired party's
> discretion over when and how long to work; the method of payment;
> the hired party's role in hiring and paying assistants; whether the
> work is part of the regular business of the hiring party; whether the
> hiring party is in business; the provision of employee benefits; and the
> tax treatment of the hired party.

*Id.* at 323-24 (quoting *Reid*, 490 U.S. at 751-52). "Since the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Id.* at 324 (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Joint and viewing all reasonable inferences in Joint's favor, the Court finds that Joint cannot recover under the terms of the Agreement as it is void under Oklahoma law. Specifically, a rational jury would find that the Agreement violated the Act because the Agreement provided for Joint to pay Weaver commission based upon the volume of his sales and because Medicare and Medicaid paid an average of 20% of Joint's total billings. In other words, Joint paid Weaver to solicit Medicare or Medicaid referrals.

Additionally, in viewing the evidence in the light most favorable to Joint and viewing all reasonable inferences in Joint's favor, the Court finds that Joint and Weaver did not have a bona fide employment relationship. Specifically, the Agreement provides, in pertinent part, "Agent will be an Agent of Company and shall not be deemed a servant or employee . . . . Company has no control over the operations of Agent or any of his employees, agents, owners [and] managers." Agreement, at p. 1, attached as Exhibit 1 to Weaver's Partial Motion for Summary Judgment. Furthermore, while Joint leased office space for Joint employees and assigned Weaver to solicit referrals in the

Knoxville, Tennessee area, Joint treated Weaver was an independent agent for tax purposes, paid Weaver on commission rather than an hourly or monthly rate, and did not provide Weaver employee benefits.  In assessing the incidents of Joint and Weaver's relationship, and weighing the factors set forth in *Darden* with no one factor being decisive, the Court finds that a rational jury would find that Weaver was not a bona fide employee of Joint.

Accordingly, the Court finds that Weaver should be granted summary judgment as to Joint's claims for breach of exclusivity, breach of non-solicitation covenant prior to termination, and breach of non-solicitation covenant after termination.

IV.    Conclusion

For the reasons set forth above, the Court GRANTS Weaver's Motion for Partial Summary Judgment [docket no. 76].  Specifically, the Court finds that Weaver is entitled to summary judgment as to Joint's claims for breach of exclusivity, breach of non-solicitation covenant prior to termination, and breach of non-solicitation covenant after termination.

**IT IS SO ORDERED this 23rd day of January, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE